UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SCOTT PETERSON,<br><br>    Plaintiff,<br><br> v.<br><br>DAVID STEINER,[1] Postmaster General of the United States Postal Service,<br><br>    Defendant. | MEMORANDUM DECISION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Civil No. 4:23-cv-00119-AMA-PK<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Paul Kohler |

   This matter comes before the Court on the Motion for Summary Judgment filed by Defendant David Steiner, Postmaster General of the United States Postal Service (Defendant will be referred to herein as "USPS").[2] The Court did not hear oral argument. Based on the parties' briefing and the applicable law, the Court will grant USPS's Motion.

## UNDISPUTED FACTS

   Plaintiff Scott Peterson worked as a full-time letter carrier for Defendant USPS from 1997 to his removal on November 6, 2020.[3] Over the course of his employment, Mr. Peterson worked in several post offices, including the Salt Lake City and Salt Lake Airport post offices.[4] On August 5, 2017, Mr. Peterson voluntarily transferred to the post office in Manti, Utah.[5] The

---

[1] David Steiner replaced Louis DeJoy as Postmaster General of the United States, effective July 15, 2025. Thus, Mr. Steiner is automatically substituted as the defendant in this case pursuant to Federal Rule of Civil Procedure 25(d).
[2] ECF No. 25.
[3] ECF No. 2 ¶ 12; ECF No. 26, Ex. B.
[4] ECF No. 26, Ex. C at 12–15.
[5] *Id*. Ex. A at 00092 ¶ 4; Ex. C at 13:21–25.

1

Manti Post Office is a relatively small branch with one postmaster, three clerks, one full-time letter carrier, and two part-time assistant carriers.[6] Mr. Peterson was the only full-time letter carrier with a regular full-time route at the Manti Post Office.[7] The two assistant carriers worked part-time and were assigned to trade off on an auxiliary route, to help with Mr. Peterson's route, and to cover Mr. Peterson's route when he was out or on vacation.[8]

As a full-time carrier, Mr. Peterson was guaranteed eight hours of work each workday.[9] If delivery of his route took less than eight hours, he would be assigned part of the assistant carrier's route to ensure that he received his guaranteed eight hours.[10] On days when delivery of Mr. Peterson's route would take longer than eight hours, he would receive overtime pay for extra time worked.[11] To avoid the need for and cost of overtime, if a day's delivery was anticipated to take longer than the regular eight-hour shift, Wade Anderson, the Manti Postmaster at the time relevant to this action, would have an assistant carrier help with Mr. Peterson's route.[12] Thus, each morning, the Manti Postmaster would consult Mr. Peterson and the assistant carrier on duty about their estimated delivery times and anticipated overtime needs based on the mail measurements for that day.[13] Both Mr. Peterson and the assistant carrier on duty were then required to call in to the office by 1:00 p.m. each day to discuss any expected variances from the morning delivery estimates so the Manti Postmaster could determine whether the assistant carrier would be needed to assist with Mr. Peterson's route.[14] Additionally, as it is the Postmaster's

---

[6] *Id*. Ex. C at 15:16–24.
[7] *Id*.
[8] *Id*.
[9] *Id*. Ex. D at 00186 ¶ 78.
[10] *Id*.
[11] *Id*.
[12] *Id*.
[13] *Id*. Ex. C at 28:10–21; Ex. D at 00186 ¶ 78.
[14] *Id*. Ex. C at 29:20–25, 30:5–25, 31:1–11; Ex. D at 00186 ¶ 78.

responsibility to approve overtime, a request for overtime could be made during this call if such time was needed.[15] Mr. Peterson did not always call in for the 1:00 p.m. check-in.[16] As such, Mr. Peterson went into unauthorized overtime several times.[17]

In addition to approving overtime, the Postmaster is responsible for investigating and locating misdelivered mail.[18] On April 1, 2019, the Manti Postmaster called Mr. Peterson, who was home on his day off, to inquire about a misdelivered package the Manti Postmaster mistakenly thought Mr. Peterson had incorrectly scanned.[19] The package was later located, and the Manti Postmaster apologized to Mr. Peterson for the mistake.[20]

The Postmaster is also responsible for conducting driving observations on all employees who drive a USPS vehicle.[21] The Manti Postmaster would conduct driver observations of both Mr. Peterson and the assistant carrier on duty on the same day.[22] Mr. Peterson estimated that he was observed once or twice per month, and the previous full-time carrier in Manti told Mr. Peterson that the Manti Postmaster had conducted driver observations quite a bit.[23] USPS has mandatory rules its employees must follow when driving its postal vehicles.[24] Drivers of postal vehicles must, for example, "[o]bserve all traffic regulations prescribed by law."[25]

In November 2018, a Manti resident visited the post office to report and lodge a complaint about Mr. Peterson, who, while driving his postal vehicle, failed to yield to her right-

---

[15] *Id*. Ex. D at 00190 ¶ 96.
[16] *Id*. Ex. C at 30:17–18.
[17] *Id*. Ex. C at 43:16–24; Ex. D at 00182 ¶ 45.
[18] *Id*. Ex. D at 182 ¶ 43.
[19] *Id*. Ex. A at 00099 ¶ 52.
[20] *Id*.
[21] *Id*. Ex. D at 00180 ¶¶ 32–34; Ex. E § 831.331.
[22] *Id*. Ex. D at 00180 ¶ 33.
[23] *Id*. Ex. A at 00093 ¶ 12; Ex. C at 20:20–23.
[24] *Id*. Ex. F.
[25] *Id*. Ex. F § 812.2.

3

of-way at an intersection, nearly causing a collision.[26] The Manti Postmaster issued Mr. Peterson a Notice of 14-Day Suspension for failure to follow several identified safety rules,[27] but the Postmaster ended up withdrawing the proposed suspension.[28]

In November 2019, Mr. Peterson left the post office through an unauthorized exit near the dock and sprained his ankle.[29] The Manti Postmaster issued Mr. Peterson discipline for failure to follow safety rules.[30] The discipline was, however, later rescinded and purged from Mr. Peterson's employment file as part of a grievance settlement.[31] Mr. Peterson returned to work and was paid all backpay.[32]

On November 4, 2020, Mr. Peterson parked in the middle of a traffic lane when he was away from his vehicle delivering mail.[33] The Manti Postmaster issued Mr. Peterson a Notice of 14-Day Suspension for failure to follow safety rules.[34] Mr. Peterson admitted to the violation of safety and traffic rules.[35] Nonetheless, he filed a grievance, which was denied.[36] The discipline was thus retained and was to remain in his file for eight months.[37]

On November 6, 2020, Mr. Peterson failed to stop at a stop sign near a school.[38] The Manti Postmaster issued Mr. Peterson a Notice of Removal for failing to follow safety rules.[39]

---

[26] *Id*. Ex. A at 00157–59.
[27] *Id*.
[28] *Id*. Ex. D at 00179 ¶ 23.
[29] *Id*. Ex. G.
[30] *Id*.
[31] *Id*. Ex. H.
[32] *Id*.
[33] *Id*. Ex. I.
[34] *Id*. The concurring official on the notice is Tony Cline.
[35] *Id*. Ex. C at 78:9–25.
[36] *Id*. Ex. J.
[37] *Id*.
[38] *Id*. Ex. B.
[39] *Id*. The concurring official on the notice is Tony Cline.

Mr. Peterson admitted to the violation[40] but filed a grievance that went to arbitration.[41] The arbitrator found in favor of USPS and sustained Mr. Peterson's removal.[42]

Mr. Peterson's date of birth is October 21, 1963, and thus he was between the ages of 53 and 57 during the times relevant to this action.[43] The Manti Postmaster never spoke to Mr. Peterson about his age.[44]

Mr. Peterson first contacted USPS's Equal Employment Opportunity ("EEO") office on December 19, 2018, to complain about the Manti Postmaster.[45] At some point, he filed a formal EEO complaint, and an in-depth investigation was conducted.[46] USPS moved for summary judgment, which the Equal Employment Opportunity Commission ("EEOC") administrative law judge granted.[47] Mr. Peterson appealed the decision to the EEOC Office of Federal Operations, and the decision was affirmed.[48]

On December 19, 2023, Mr. Peterson initiated this action, alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA").[49] USPS moved for summary judgment on all claims on August 1, 2025.[50] Mr. Peterson filed his response on December 30, 2025,[51] to which USPS replied on January 13, 2026.[52]

---

[40] *Id*. Ex. C at 80:8–11.
[41] *Id*. Ex. K.
[42] *Id*. at 22.
[43] *Id*. Ex. A at 00093 ¶ 9.
[44] *Id*. Ex. C at 22:1–6.
[45] *Id*. Ex. L.
[46] *See, e.g., id*. Exs. A, C–D.
[47] *Id*. Ex. M.
[48] *Id*. Ex. N.
[49] ECF No. 1.
[50] ECF Nos. 25–26.
[51] ECF No. 40.
[52] ECF No. 41.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[53] "A fact is 'material' if, under the governing law, it could influence the outcome of the lawsuit."[54] "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmovant on the evidence presented."[55]

"In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[56] "The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party."[57] Rather, "[t]he litigant must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful."[58] In doing so, the nonmovant must set forth evidence of specific facts illustrating the existence of a genuine issue for trial.[59] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[60]

## DISCUSSION

Mr. Peterson's Complaint alleges two causes of action: discrimination and retaliation in

---

[53] Fed. R. Civ. P. 56(a).
[54] *Mauldin v. Driscoll*, 136 F.4th 984, 993 (10th Cir. 2025) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[55] *Id.*
[56] *Conaway v. Smith*, ma, 794 (10th Cir. 1988).
[57] *Id.*
[58] *Id.*
[59] *Anderson*, 477 U.S. at 248.
[60] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

violation of the ADEA.[61] Additionally, while not clearly set forth, Mr. Peterson's allegations refer to a "hostile work environment" such that it appears Mr. Peterson may also attempt to bring a claim for hostile work environment in violation of the ADEA.[62] Nonetheless, Mr. Peterson, in his Opposition to USPS's Motion for Summary Judgment, concedes that the evidence does not establish an actionable hostile work environment claim.[63] Based on this concession, to the extent a hostile work environment claim is properly before the Court, the Court grants summary judgment in Defendants' favor on this claim.

The Court is thus left with Mr. Peterson's discrimination and retaliation claims and will limit its analysis to those claims.

A.     **Exhaustion of Administrative Remedies**

"[T]o assert a civil action under the ADEA . . ., federal employees 'must comply with specific administrative complaint procedures in order to exhaust their administrative remedies.'"[64] "Before a federal civil servant can sue his employer for [discrimination or retaliation], he must, among other things, 'initiate contact' with an [EEO] counselor at his

---

[61] *See* ECF No. 2 at 13, 16.
[62] *See, e.g., id*. ¶ 19.
[63] ECF No. 40 at 26. In doing so, Mr. Peterson states that "[t]here is no dispute that he subjectively felt that virtually all of the Postmaster's actions toward[] him created an intimidating and stressful and hostile work environment. But under the current state of the law, that's probably not enough." *Id*. While Mr. Peterson uses the word "probably," the law is clear that "[i]t is not enough that the plaintiff perceived the conduct to be severe or pervasive. Rather, the plaintiff must 'show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult.'" *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021) (quoting *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1176 (10th Cir. 2020)). Mr. Peterson has failed to provide any argument that or evidence from which a reasonable jury could find that a hostile work environment existed. As such, Mr. Peterson has failed to establish the existence of a genuine issue of material fact on this claim.
[64] *Rinck v. Duffy*, No. 2:25-cv-02010-JAR-BGS, 2025 WL 2770504, at *4 (D. Kan. Sept. 26, 2025) (quoting *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020)).

agency 'within 45 days of the date of the matter alleged to be discriminatory.'"[65] "This regulatory exhaustion requirement is not a jurisdictional prerequisite for suit but is a claims-processing rule that the employer may raise as an affirmative defense."[66] "Because it is a mandatory rule . . . the [C]ourt must enforce this exhaustion requirement if the employer properly raises it."[67]

"Furthermore, 'each discrete incident of [discriminatory or retaliatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted.'"[68] "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[69]

It is undisputed that Mr. Peterson first contacted a USPS EEO counselor on December 19, 2018. As such, USPS argues that incidents that occurred before November 4, 2018—forty-five days before the contact with the EEO counselor—have not been timely exhausted. Mr. Peterson concedes that he cannot obtain relief for any discrete actions that occurred prior to November 4, 2018.[70] Accordingly, as USPS sets forth, Mr. Peterson has timely exhausted the following alleged discrete actions: his November 2020 Notice of Removal; the three disciplinary actions taken in 2018, 2019, and 2020; the call on his day off about a misdelivered package; driver observations; and questioning about delivery estimates.

---

[65] *Green v. Brennan*, 578 U.S. 547, 549–50 (2016) (quoting 29 C.F.R. § 1614.105(a)(1)).
[66] *Hickey*, 969 F.3d at 1118.
[67] *Id*.
[68] *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (alterations in original) (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)).
[69] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).
[70] ECF No. 40 at 17. Mr. Peterson asserts that he could rely on actions that occurred prior to November 4, 2018, as part of a continuing violation with regard to a hostile work environment claim. *Id*. But Mr. Peterson concedes that he has failed to establish his hostile work environment claim. *Id*. at 26. The Court will thus focus only on discrete actions that occurred after November 4, 2018.

**B.     ADEA Retaliation**

As Mr. Peterson lacks direct evidence of retaliation, the parties do not dispute that Mr. Peterson's claims should be analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). "Under this framework, [Mr. Peterson] must first establish a prima facie case of discrimination and retaliation."[71] If such a prima facie case is established, "the burden shifts to [USPS] 'to articulate some legitimate, nondiscriminatory reason' for its action.'"[72] "Should [USPS] meet this burden, [Mr. Peterson] must 'be afforded a fair opportunity to show that [USPS's] stated reason . . . was in fact pretext.'"[73]

To establish a prima facie claim of retaliation under the ADEA, Mr. Peterson must show that "(1) [he] engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action."[74] The parties do not dispute that Mr. Peterson engaged in protected activity on December 19, 2018, when he made contact with the EEO counselor. Furthermore, the parties do not dispute that the November 4, 2020 Notice of 14-Day Suspension and the November 6, 2020 Notice of Removal are materially adverse employment actions.[75]

---

[71] *Mauldin*, 136 F.4th at 993.
[72] *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802).
[73] *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 804).
[74] *Id.* at 995.
[75] As for the November 2018 and 2019 disciplinary actions that were withdrawn or rescinded from Mr. Peterson's employment record, Mr. Peterson concedes that these actions do not constitute adverse actions. ECF No. 40 at 20. Moreover, the November 2018 disciplinary action occurred prior to Mr. Peterson's meeting with the EEO counselor and thus cannot serve as a basis for his retaliation claim. *See Kenfield v. Colo. Dept. of Pub. Health & Env't*, 557 F. App'x 728, 733 (10th Cir. 2014) (unpublished) ("By its very nature, retaliatory conduct must come *after* the protected activity."). As for the alleged scrutiny of work including driver estimates, the

The dispute thus centers around the third element—whether a causal connection existed between the protected activity and the materially adverse actions. To establish this connection, Mr. Peterson must show that USPS "was motivated . . . by a desire to retaliate for his protected activity."[76] "As a prerequisite to this showing, [Mr. Peterson] must first come forward with evidence from which a reasonable factfinder could conclude that those who decided [to take the adverse employment actions] had knowledge of his protected activity."[77] While the parties do not direct any argument to the issue of knowledge, whether the decisionmakers had knowledge of Mr. Peterson's meeting with the EEO counselor and when they gained that knowledge is somewhat unclear from the record. Mr. Peterson stated in his deposition that he never talked to Tony Cline, the concurring official on both disciplinary actions at issue, about the EEO activity,[78] and Mr. Peterson did not know when Mr. Cline became aware of the EEO activity.[79] He also stated that the Manti Postmaster never said anything about the EEO activity to Mr. Peterson,[80] and he was unaware of when the Manti Postmaster became aware of the EEO

---

missing package call, and driver observations, Mr. Peterson provides no argument in response to USPS's assertion that these do not rise to the level of materially adverse actions as they are ordinary workplace tribulations. Thus, it appears that Mr. Peterson concedes that these do not constitute materially adverse actions—or at least abandons any argument to the contrary. See *Lewis v. XL Catlin*, 542 F. Supp. 3d 1159, 1168 n.6 (D.N.M. 2021) ("[U]nder Tenth Circuit law, failing to respond constitutes waiver." (citing *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768 (10th Cir. 2001) (unpublished))). In any event, to constitute a materially adverse action, the retaliatory action must cause significant harm. See *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 357 (2024) (discussing how, in a retaliation context, "materially adverse" means "that it causes 'significant' harm"); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). While Mr. Peterson may have found his being supervised and critiqued irritating, the record does not indicate that these actions had any significant negative impact on his employment independent of the disciplinary actions he received.

[76] *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).
[77] *Id*.
[78] ECF No. 26, Ex. C at 64:10–12.
[79] *Id*. at 61:21–24.
[80] *Id*. at 64:6–9.

activity.[81] However, the Manti Postmaster participated in the EEO investigation,[82] so he must have found out about Mr. Peterson's meeting with the EEO counselor at some point.

Nonetheless, even assuming that the decisionmakers had knowledge of the protected activity, Mr. Peterson still must establish a causal connection between the protected activity and the adverse actions. In an attempt to do so, Mr. Peterson relies solely on temporal proximity, arguing that after he spoke to the EEO counselor, the Manti Postmaster issued Mr. Peterson disciplinary actions that were more serious than those he had received in the past such that he was ultimately removed from his position. While it is true that retaliatory motive may be inferred "from a close temporal proximity between an employee's protected conduct and an employer's adverse employment action[,]"[83] the Tenth Circuit has held that "unless the [adverse action] is very close in time indeed to the protected activity, . . . a plaintiff cannot rely on temporal proximity alone and must come forward with additional evidence to establish causation."[84] "[A] one-and-a-half month period may suffice to establish causation on a prima facie basis, but a three-month period, standing alone, will not suffice."[85] Mr. Peterson first contacted the EEO counselor on December 19, 2018. He received the Notice of 14-Day Suspension on November 4, 2020 and the Notice of Removal on November 6, 2020—nearly two years after he met with the EEO counselor. This time span is much too extended to raise an inference of retaliatory motive. In fact, it is "insufficient to establish a causal connection as a matter of law."[86]

Mr. Peterson cannot, then, rely on temporal proximity alone and must come forward with

---

[81] *Id*. at 62:2–4.
[82] *See id*. Ex. D.
[83] *Hinds*, 523 F.3d at 1204.
[84] *Id*.
[85] *Id*.
[86] *Id*. (citation modified).

11

additional evidence of retaliatory motive. He has failed to do so. As such, no reasonable jury could find that a causal connection existed between the protected activity and the adverse employment actions. Mr. Peterson has thus failed to establish that any genuine issues of material fact exist with respect to a causal connection, and he has failed to establish his prima facie case for retaliation.

Even if Mr. Peterson could establish a prima facie case of retaliation, he concedes that USPS has articulated a legitimate, non-discriminatory reason for taking the adverse actions—namely, that Mr. Peterson violated safety and traffic rules. Turning, then, to the final *McDonnell Douglas* step, Mr. Peterson "must present evidence that shows a genuine issue of material fact as to whether [USPS's] reason was pretextual."[87] "The burden is more demanding here than at the prima facie step, and it requires a plaintiff to assume the normal burden of any plaintiff to prove his or her case at trial."[88]

Here, "the evidence in its totality does not raise a genuine issue of material fact regarding [USPS's] motive"[89] in issuing the disciplinary action and removing Mr. Peterson from his position. Mr. Peterson admits that he violated the safety and traffic rules for which he was disciplined and removed,[90] and there is no indication that the adverse actions were undertaken with retaliatory motive. Indeed, Mr. Peterson went through grievance processes for each of the actions at issue: his grievance with respect to the November 4, 2020 Notice of 14-Day Suspension was denied,[91] and his grievance with respect to the November 6, 2020 Notice of

---

[87] *Mauldin*, 136 F.4th at 996.
[88] *Id*. (citation modified).
[89] *Id*. (citation modified).
[90] ECF No. 26, Ex. C at 78:9–25, 80:8–11.
[91] *Id*. Ex. J.

Removal was also denied.[92] There is no indication that these grievance processes were not neutral and devoid of retaliatory motive. Accordingly, no reasonable jury could find that USPS's reason was pretext for retaliation, and summary judgment in USPS's favor is appropriate on this claim.

C.   **ADEA Discrimination**

Before analyzing the merits of Mr. Peterson's discrimination claim, the Court will touch on the relevant causation standard. 29 U.S.C. § 633a(a) provides that all personnel actions regarding federal employees "who are at least 40 years of age . . . shall be made free from any discrimination based on age." In analyzing this language, the Supreme Court emphasized that "under § 633a(a), age must be the but-for cause of *differential treatment*" but need not be a "but-for cause of *the ultimate decision*."[93] The Supreme Court thus "recognized that liability may attach in the absence of but-for causation between the adverse employment action and age discrimination"[94] in the context of federal employment. Nonetheless, the Supreme Court also held that "§ 633a(a) plaintiffs who demonstrate only that they were subjected to unequal consideration cannot obtain reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision."[95] Plaintiffs seeking such remedies "must show that age discrimination was a but-for cause of the employment outcome."[96]

Here, the parties do not dispute that Mr. Peterson must prove that age discrimination was a but-for cause of the employment outcome. Furthermore, the remedies Mr. Peterson requests relate to the "end result" of USPS's decisions to issue the 14-Day Suspension and to terminate

---

[92] *Id*. Ex. K.
[93] *Babb v. Wilkie*, 589 U.S. 399, 408 (2020) (emphasis in original).
[94] *Cloud v. Wormuth*, No. 20-cv-4-EFM, 2023 WL 4745730, at *6 (E.D. Okla. July 24, 2023).
[95] *Babb*, 589 U.S. at 413.
[96] *Id*.

13

Mr. Peterson's employment.[97] The Court is thus satisfied that Mr. Peterson must ultimately prove but-for causation to prevail on his claim for relief.

Turning, then, to the merits of Mr. Peterson's claim, because Mr. Peterson lacks direct evidence of discrimination, the Court will analyze this claim under the *McDonnell Douglas* burden-shifting framework.[98] To establish a prima facie case of discrimination, a plaintiff must show that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he is qualified for the position, and (4) "the challenged action occurred under circumstances giving rise to an inference of discrimination[.]"[99] The parties do not dispute that Mr. Peterson was a member of a protected class because he was over the age of forty at the time relevant to the allegations and that Mr. Peterson was qualified for the position. The parties also do not dispute

---

[97] Mr. Peterson concedes that he cannot receive compensatory damages for emotional distress under the ADEA. *See Villescas v. Abraham*, 311 F.3d 1253, 1261 (10th Cir. 2002) ("Congress did not expressly and unambiguously waive the government's sovereign immunity from separate compensatory damage awards for emotional distress and humiliation."). But Mr. Peterson also seeks lost wages and benefits. ECF No. 2 ¶ 80. *See Ridgell-Boltz v. Colvin*, 565 F. App'x 680, 683 (10th Cir. 2014) (unpublished) ("[T]he ADEA provides for legal and equitable relief, including reinstatement, back-pay, and other pecuniary benefits associated with the job[.]").

[98] In light of the Supreme Court's decision in *Babb*, there is some question as to whether the *McDonnell Douglas* framework continues to apply to federal-sector age-discrimination claims. The Eleventh Circuit has expressly abandoned the framework in assessing such claims. *Buckley v. Sec'y of Army*, 97 F.4th 784, 794–95 (11th Cir. 2024). It appears that the Tenth Circuit "has not yet addressed whether the *McDonnell Douglas* burden-shifting framework continues to apply to federal-sector age discrimination claims post-*Babb*[.]" *Laber v. Hegseth*, No. 23-3157, 2025 WL 1511795, at *6 n.10 (10th Cir. May 28, 2025); *see also Nelson v. DeJoy*, No. 23-1227, 2024 WL 3507723, at *4 (10th Cir. July 23, 2024) ("We conclude it is unnecessary for us to resolve whether *Babb's* causation standard applies to [Plaintiff's] Title VII claims or, relatedly, whether the *McDonnell Douglas* framework continues to apply to claims brought under Title VII's federal-sector provision. That is because the outcome of this appeal is the same whether we apply pre-*Babb* standards or whether we conclude . . . that those standards are incompatible with *Babb*."). But the Tenth Circuit recently applied the framework in a federal-sector age discrimination case. *See Mauldin*, 136 F.4th at 996–97. Here, the parties agree that the *McDonnell Douglas* framework still applies and that Mr. Peterson must still show but-for causation. Thus, as there does not appear to be any Tenth Circuit guidance to the contrary, the Court will employ the *McDonnell Douglas* framework.

[99] *Mauldin*, 136 F.4th at 996.

that the November 4, 2020 Notice of 14-Day Suspension and the November 6, 2020 Notice of Removal are adverse actions.[100]

The question, then, is whether the adverse actions occurred under circumstances that give rise to an inference of age discrimination. Mr. Peterson vaguely asserts—without pointing to any specific evidence—that the totality of the evidence supports an inference of discrimination on the basis of age. However, Mr. Peterson cannot rely on pure speculation and conclusory statements to defeat summary judgment. Mr. Peterson admits that the Manti Postmaster never made comments about his age.[101] He further admits that, as the only regular full-time mail carrier,

---

[100] As for the November 2018 and the November 2019 disciplinary actions that were withdrawn or rescinded from Mr. Peterson's employment record, Mr. Peterson concedes that these actions are not adverse. ECF No. 40 at 20. Mr. Peterson asserts that even if these actions were not adverse, they could be a part of a continuing violation contributing to the creation of a hostile work environment. *Id.* But Mr. Peterson concedes that his hostile work environment claim fails. *Id.* at 26. As for the alleged scrutiny of work including driver estimates, the missing package call, and driver observations, Mr. Peterson provides no argument in response to USPS's assertion that these do not rise to the level of adverse actions. Thus, it appears that Mr. Peterson concedes that these do not constitute adverse actions—or at least abandons any argument to the contrary. *Lewis v. XL Catlin*, 542 F. Supp. 3d 1159, 1168 n.6 (D.N.M. 2021) ("[U]nder Tenth Circuit law, failing to respond constitutes waiver." (citing *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768 (10th Cir. 2001) (unpublished))). Moreover, "[t]he *Muldrow* 'some harm' standard applies to adverse employment actions" in the context of discrimination claims "under the ADEA." *Staton v. DeJoy*, No. 1:23-cv-03223-SBP, 2025 WL 42821, at *13 (D. Colo. Jan. 7, 2025). Under this standard, "an employment action is adverse if a plaintiff can demonstrate that [he] experienced '*some harm* respecting an identifiable term or condition of employment' as a result of that action." *Scheer v. Sisters of Charity of Leavenworth Health Sys., Inc.*, 144 F. 4th 1212, 1216 (10th Cir. 2025) (emphasis in original) (quoting *Muldrow*, 601 U.S. at 355). Thus, "even without importing the [former] significance requirement into the definition of adverse—'a mere inconvenience or an alteration of job responsibilities does not qualify.'" *Cordova v. Textron Aviation, Inc.*, No. 23-1233-DDC, 2025 WL 1262487, at *7 (D. Kan. Apr. 30, 2025) (quoting *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1222 (10th Cir. 2022)). Plaintiff has provided neither argument nor evidence establishing that, independent of the disciplinary actions he received, his being generally observed and critiqued at work harmed an identifiable term or condition of his employment. While Mr. Peterson did not like these actions, "[n]ot everything that makes an employee unhappy is an actionable adverse action." *Braxton v. Nortek Air Sols., LLC*, 769 F. App'x 600, 604 (10th Cir. 2019) (unpublished) (citation modified).
[101] ECF No. 26, Ex. C at 22:1–6.

15

there were no similarly situated employees in his workplace that can be used for comparison,[102] and to the extent the part-time assistant carriers could be used for comparison, Mr. Peterson makes no effort to refute USPS's arguments that there is no evidence showing that the assistant carriers were treated more favorably than Mr. Peterson under sufficiently similar circumstances. In short, nothing in the record establishes beyond mere speculative possibility that the adverse employment actions were in any way related to Mr. Peterson's age, and thus no reasonable jury could find that the adverse actions occurred under circumstances that give rise to an inference of age discrimination. Accordingly, Mr. Peterson has failed to establish his prima facie case.

Even if Mr. Peterson could establish a prima facie case of age discrimination, Mr. Peterson concedes that USPS has articulated a legitimate, non-discriminatory reason for taking the adverse actions: Mr. Peterson violated safety and traffic rules. As such, the burden would shift back to Mr. Peterson to "prove that the legitimate reason was a pretext for discrimination."[103] "This evidence can be presented in one of two forms, either by showing (1) the reason is factually false, or (2) discrimination was a primary factor in the action."[104] "Examples of such evidence include weaknesses, implausibility, inconsistencies, incoherencies, or contradictions in the explanation that a reasonable factfinder could rationally find unworthy of credence."[105] Mr. Peterson "need not show both that [USPS's] 'reasons were a pretext *and* that

---

[102] ECF No. 40 at 1–2 ("[H]e was the only regular, full-time mail carrier in the Manti, Utah, Post Office, so he really can't compare how the Postmaster treated him compared to how he treated similarly situated employees because there were no identically, similarly situated, employees in his workplace.").
[103] *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1081 (10th Cir. 2023).
[104] *Mauldin*, 136 F. 4th at 996–97.
[105] *Id*. at 997.

the real reason was discrimination—the fact of pretext alone may allow the inference of discrimination.'"[106]

Mr. Peterson admits that he violated the safety and traffic rules for which he was disciplined and removed;[107] thus, USPS's reason is not factually false. Mr. Peterson contends that he has pointed to evidence that supports the drawing of an inference of pretext, but he does not in fact direct the Court to any evidence. And nothing in the record demonstrates weakness, implausibility, inconsistency, incoherency, or contradiction in USPS's explanation. Indeed, the disciplinary actions at issue went through grievance processes, and the disciplinary actions were upheld.[108] There is no indication that these grievance processes were not neutral and devoid of discriminatory motive. Therefore, no reasonable jury could find that USPS's reason was pretext for discrimination, and Mr. Peterson has failed to establish any genuine issues of material fact on this issue. The Court will thus grant summary judgment in Defendants' favor on this claim.

## ORDER

Based on the foregoing, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 25).

DATED this 9th day of February 2026.   BY THE COURT:

_____
Ann Marie McIff Allen
United States District Judge

---

[106] *Id*. (emphasis in original) (quoting *Walkingstick Dixon v. Okla. ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321, 1337 (10th Cir. 2025)).
[107] ECF No. 26, Ex. C at 78:9–25, 80:8–11.
[108] *Id*. Exs. J–K.